IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JAMES JOHNSON, ) | Civil Action No. 3:05-2173-JFA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On November 19, 2002, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held October 28, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated February 7, 2005, denying benefits and finding that Plaintiff was not disabled because he could perform his past relevant work.

Plaintiff was 56 years old at the time of the ALJ's decision. He has a high-school education with two years of college and past relevant work as a title searcher, forklift operator, and machine operator. Plaintiff alleges disability since July 15, 2002, due to lower back and stomach pain.

The ALJ found (Tr.20-21):

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's osteoarthritis, Spina bifida and hypertension are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform his past work as a title searcher, fork lift operator and machine operator.

7. The claimant's past relevant work as title searcher, fork lift operator and machine operator did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8. The claimant's medically determinable osteoarthritis, Spina Bifida and hypertension do not prevent the claimant from performing his past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1 520(f) and 416.920(f)).

On June 17, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on August 1, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ erred in failing to properly evaluate the opinions of his treating physician; (2) the ALJ failed to explain his findings regarding Plaintiff's residual functional capacity ("RFC") as required by Social Security Ruling ("SSR") 96-8p; and (3) the ALJ did not properly assess Plaintiff's allegations of pain and the credibility. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

A.      Substantial Evidence

Plaintiff alleges that the ALJ's determination that he has the RFC to perform medium work[1] is not supported by substantial evidence. Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to

---

[1] Medium work is defined as involving lifting up to fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. If someone can do medium work, it is also determined that he or she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

3

>justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff had the RFC for medium work and thus could perform his past relevant work as a title searcher (light and semi-skilled); forklift operator (medium and semi-skilled), and machine operator (medium and semi-skilled) is supported by substantial evidence.[2] Although Plaintiff alleges he became disabled in January 2002, the first evidence of medical treatment in the record is from October 29, 2002, at which time Plaintiff sought treatment from Dr. Leopold M. Muniz for abdominal pain. Examination revealed no abnormalities. Plaintiff was instructed to increase his fluid intake and exercise and follow-up with Dr. Muniz after blood work was obtained. Tr. 99. On November 8, 2002, Dr. Muniz examined Plaintiff for complaints of a two-week history of intermittent low back pain and abdominal pain. Dr. Muniz's examination revealed no neurological abnormalities; negative straight leg raising tests; good strength, sensation, pulses, and range of motion in all extremities; normal bowel sounds and no abdominal masses; and pain in the lumbar region with palpation and forward and lateral bending. Dr. Muniz diagnosed low back pain. Skelaxan was prescribed, along with range of motion exercises, heating pad, and

---

[2] Contrary to Plaintiff's argument that the ALJ violated SSR 96-8p by failing to articulate how he determined Plaintiff's RFC, the ALJ stated that he determined Plaintiff's RFC based on the opinions of the State agency medical consultants who specifically found that Plaintiff could perform medium work, the medical record which did not show any evidence of severe osteoarthritis that would preclude medium work, the absence of evidence of any mental impairments, findings concerning Plaintiff's credibility, and other evidence of record. Tr. 19-20.

4

massage. Plaintiff was told to avoid lifting more than ten pounds[3] and to follow up after x-rays were taken. Tr. 98. On November 18, 2002, an x-ray of Plaintiff's lumbar spine showed no abnormalities with the exception of the congenital abnormality of occult spina bifida.[4] The configuration, segmentation, and alignment of Plaintiff's vertebra were normal; vertebral body height and the intervertebral disc spaces were well-maintained; and no fractures, subluxation, or acute bony abnormalities were detected. Tr. 97. Plaintiff did not seek any further treatment from Dr. Muniz.

On March 19, 2003, Plaintiff was examined by Dr. Edmund P. Gaines at the request of the Commissioner. Tr. 103-105. Plaintiff related that he injured his back unloading freight at work in July 2002, but did not see a doctor at the time or report the injury to the company. Plaintiff also complained of intermittent abdominal pain. Dr. Gaines' examination revealed that Plaintiff had normal bowel sounds; no palpable abdominal masses; full range of motion and good strength in his upper extremities; full strength, normal pulses, and no edema in his lower extremities; no sensory loss; no abnormal reflexes; no abnormalities of gait; reduced range of motion in his hips and lumbar spine; marked spasm in his paralumbar musculature; and positive straight leg raising tests bilaterally. Dr. Gaines diagnosed osteoarthritis, mechanical back pain, lower back spasm, and history of occult spina bifida. He opined that Plaintiff's physical findings were inconsistent; osteoarthritis might account for the decreased range of motion of Plaintiff's hips; and x-rays of Plaintiff's lumbar spine

---

[3]There is no indication that this restriction was anything more than a temporary instruction.

[4]Spina bifida is a developmental abnormality which is characterized by a defective closure of the vertebral arch. Occult spina bifida or spina bifida occulta is "spina bifida in which there is a defect of the vertebral arch without protrusion of the spinal cord or meninges." Dorland's Illustrated Medical Dictionary 1736 (30th ed. 2003).

5

showed occult spina bifida without evidence of osteoarthritis or degenerative disc disease. Dr. Gaines concluded that he could find "no disabling physical malady." Tr. 105.

Despite Plaintiff's complaints of disabling pain, he did not seek medical attention again until October 6, 2003, at which time he was examined by Dr. James Moore, a family physician. Plaintiff complained of lower back pain, occasional dizziness, and nervousness. Examination revealed pain with spinal flexion and lateral bending, negative straight-leg-raising tests, and blood pressure of 149/100. Dr. Moore diagnosed hypertension and low back pain, and prescribed Atacand, Naprosyn, and Flexeril. He also administered an injection of Toradol. Dr. Moore noted that he would not approve Plaintiff for disability until further work up. Tr. 116. On November 6, 2003, Plaintiff returned to Dr. Moore, complaining of increased back pain, numbness and tingling in his right leg, and dizziness. Plaintiff claimed he had been seen in a hospital emergency room on October 12 (no year give), at which time he was told he had a "slipped disk."[5] He also stated that he was unable to afford medication. Dr. Moore prescribed Vioxx and Skelaxin, and noted that Plaintiff was using a cane.[6] Tr. 114. Plaintiff complained to Dr. Moore of increased back pain on November 20, 2003. Dr. Moore noted that Plaintiff had pain with spinal flexion and bending, tenderness at L4-5, and positive straight leg raising tests bilaterally. He prescribed Celebrex, Prednisone, and Percocet. Dr. Moore assessed "chronic low back pain - concerned about ruptured disc" and hypertension. Tr. 113.

---

[5]There is no medical record of this visit in the transcript. Plaintiff appears to allege that the Commissioner should have obtained this record. Plaintiff's Brief at 20-21. At the hearing, however, Plaintiff's counsel did not have any objections to the medical record and stated that no more records would be forthcoming. Tr. 146-147. No other medical records were submitted after the hearing or to the Appeals Council. In his August 30, 2004 update, Plaintiff states he was told at the emergency room that "maybe" he had a slipped disk. Tr. 88.

[6]There is no indication that a cane was prescribed by a medical provider.

There is no indication that Plaintiff sought further treatment from Dr. Moore or any other physician after that date.

Plaintiff was able to perform medium work for many years despite his occult spina bifida. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)(claimant who worked with impairments over a period of years without any worsening of condition was not entitled to disability benefits); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)(finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration).

The ALJ's decision is also supported by the finding of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On March 26, 2003, Dr. George L. Chandler, a State agency medical consultant, assessed Plaintiff's physical RFC based on a review of Plaintiff's records. Tr. 131-138. Dr. Chandler concluded that Plaintiff could perform medium work subject to minor postural limitations of never climbing ladders, ropes, or scaffolds. On September 22, 2003, another State agency medical consultant assessed Plaintiff's physical RFC based on Plaintiff's records and reported the same limitations as Dr. Chandler. Tr. 121-128.

B.      Pain/Credibility

Plaintiff alleges that the ALJ failed to properly assess his credibility and allegations of pain. The Commissioner contends that the ALJ properly considered Plaintiff's infrequent medical treatment, Plaintiff's reliance on over-the-counter medication for pain relief, the lack of radiographic

7

findings consistent with Plaintiff's complaints, and other inconsistencies in assessing Plaintiff's credibility.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered the medical and non-medical evidence in making his credibility determination.[7] The ALJ's decision is supported by the medical record, as discussed above. Despite his complaints of disabling pain, Plaintiff infrequently sought medical care for his condition. Failure of the claimant to seek ongoing treatment for allegedly disabling pain and other subjective

---

[7]Plaintiff alleges the ALJ erred by finding that Plaintiff was not credible solely because there was no evidence of underlying impairments that would cause the pain limitations alleged. The ALJ, however, stated that the medical evidence did establish the existence of medically determinable impairments capable of producing some of the symptoms alleged by claimant such that he had to consider the medical and non-medical evidence including Plaintiff's use and effects of medications, treatment, and daily activities in determining Plaintiff's credibility. See Tr. 19.

symptoms are important facts that will lend support for an ALJ's finding of lack of credibility of the complaints.  See Mickles, 29 F.3d at 930; see also Williams v. Bowen, 790 F.2d 713, 715 (8th Cir. 1986)(plaintiff's testimony about pain and other subjective symptoms discredited where no (or little) medication or treatment sought for the pain).  Plaintiff testified at the hearing that he took only over-the-counter medication to relieve his pain.  See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

      C.     Treating Physician

Plaintiff alleges that the ALJ erred in disregarding the opinion of his treating physician, Dr. Moore, that he was disabled.  On November 20, 2003, Dr. Moore noted that he would approve Plaintiff for disability.  Tr. 113.  On April 13, 2003, Dr. Moore completed a physical RFC questionnaire in which he assessed that Plaintiff had chronic low back pain and spina bifida, and symptoms of back pain, numbness, and tingling.  Tr. 108.  He opined that Plaintiff constantly experienced pain severe enough to interfere with concentration; Plaintiff was incapable of performing even "low stress" jobs; he could sit for only five to ten minutes at one time and less than a total of two hours in an eight-hour day; he could stand for only ten to fifteen minutes at one time and stand/walk for less than a total of two hours in an eight-hour day; he was unable to walk any distance without resting or experiencing severe pain; he needed to use a cane for occasional standing/walking; he would need to take unscheduled fifteen to thirty minute breaks during the

workday; he could never lift ten pounds and could only rarely lift less than ten pounds; and he could never twist, bend, crouch, climb ladders, or climb stairs. Tr. 109-111.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount Dr. Moore's opinion of disability and RFC findings is supported by substantial evidence. The x-rays in the record do not support Dr. Moore's findings, and Dr. Moore did not order any additional objective tests. Dr. Moore did not refer Plaintiff to an orthopaedist or other specialist. Dr. Moore only appears to have examined Plaintiff on three

occasions (October 6, November 6, and November 20, 2003). <u>See</u> Tr. 108-117. Plaintiff's purpose for his appointments with Dr. Moore appears to have been to obtain a physician's approval for disability.[8] <u>See</u> Tr. 113, 116. At the time Dr. Moore completed the April 2004 RFC questionnaire, he does not appear to have examined Plaintiff in approximately five months.

Dr. Moore's opinion is inconsistent with the findings and opinions of examining physicians Dr. Muniz and Dr. Gaines. His restrictions are also more severe than those testified to by Plaintiff. Plaintiff stated that he could be on his feet for two to three hours at a time, sitting did not bother him unless he sat for a long time, and he could sit for two to three hours at a time without having to get up. He also testified that no doctors restricted the amount of weight he should lift. Tr. 161, 164-165. Dr. Moore's opinion is also inconsistent with that of the State agency physicians who opined that Plaintiff could perform medium work.

---

[8] A treating source:

means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). **We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.** In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502 (emphasis added).

11

## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered <u>de novo</u>, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 10, 2006
Columbia, South Carolina